RECEIVED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| RICHARD HOLLEY, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| B'NAI B'RITH WIREGRASS SENIOR HOUSING II, | ) |
| | ) |
| AND | ) |
| | ) |
| SPM, LLC, | ) |
| | ) |
| AND | ) |
| | ) |
| SHEILA WEST, | ) |
| IN HER OFFICIAL CAPACITY AS PROPERTY | ) |
| MANAGER FOR SPM, LLC AND GLEN EAST II | ) |
| | ) |
| AND | ) |
| | ) |
| BECKY HUTTO, | ) |
| IN HER OFFICIAL CAPACITY AS COMMUNITY | ) |
| MANAGER FOR GLEN EAST II | ) |

2:19-CV-745-

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. PRELIMINARY STATEMENT

1.     Plaintiff brings this action pursuant to 42 U.S.C. § 3613 (U.S. Fair Housing Act) based upon his entitlement under § 3604(f)(2) and § 3604(f)(3)(B) to a "reasonable accommodation" of his § 3602(h) "handicap" to have Defendants allow his use of his own patio

furniture, instead of the furniture provided by the complex, Glen East II; and prevent retaliatory conduct based on this request for reasonable accommodations under 42 U.S.C. § 1367.

2.      Glen East II, the housing complex where Plaintiff has resided the last seven years, is operated by B'Nai B'Rith Wiregrass Senior Housing II, a non-profit corporation organized, incorporated, and operating under the laws of Alabama.

3.      B'Nai B'Rith Wiregrass Senior Housing II operates Glen East II under the Section 202 program of the United States Department of Housing.

4.      The Section 202 Supportive Housing for the Elderly Program is authorized by Section 202 of the Housing Act of 1959 (12 U.S.C. 1701q), as amended.  Program regulations are found at 24 CFR Part 891.  Its basic purpose is to help expand the supply of affordable housing with supportive services for the elderly.  It provides very low income elderly, including Plaintiff, with options that allow them to live independently but in an environment that provides support activities such as cleaning, cooking, transportation, etc.  HUD provides interest-free capital advances to private, nonprofit sponsors to finance the development of supportive housing for the elderly.  The capital advance does not have to repaid as long as the project serves very low-income elderly persons for 40 years.  Project rental assistance funds are provided to cover the difference between the HUD -approved operating cost for the project and tenants' contribution towards rent.

5.      Plaintiff  RICHARD HOLLEY  is a natural person, residing in Dothan, Houston county, Alabama,  in the Glen East II apartment complex owned and operated by B'Nai B'Rith Wiregrass Senior Housing.  Plaintiff resides alone.

6.      Defendant SPM, LLC is a corporation duly organized and conducting business in the state of Alabama.  Defendant SPM, LLC provides property management services at Glen East II apartment complex for B'Nai B'Rith Wiregrass Senior Housing

7.      Defendant BECKY HUTTO is the Community Manager at Glen East II and has personally made all administrative decisions material hereto.

8.      Defendant SHEILA WEST is the Property Manager at SPM, LLC, the supervisor of Defendant Hutto, and has approved all decisions made.

9.      Plaintiff seeks a declaration that Defendant Hutto's and West's failure and/or refusal to "reasonably accommodate" Plaintiff's § 3602(h) "handicap" violates 42 U.S.C. § 3604(f)(2) and  § 3604(f)(3)(B).

10.      Consistent with the foregoing, Plaintiff seeks to enjoin Defendants to allow use of Plaintiff's own patio furniture, and to enjoin Defendants from engaging in retaliatory conduct due to Plaintiff's pursuit of this reasonable accommodation.

## II.  JURISDICTION

11.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 in that this is a "federal question" litigation comprising a civil action arising under the laws of the United States.

12.     Jurisdiction is also conferred by 42 U.S.C. § 3613.

13.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 with respect to all Defendants.

## III.  STATUTORY  BACKGROUND
### A.  SUPPORTIVE HOUSING

14.     The residential tenancy between Plaintiff as the tenant and B'Nai B'Rith Wiregrass Senior Housing as the landlord, is pursuant to a program often referred to as "Section 202 Housing", which is governed by 12 U.S.C. §§ 1701q *et sequitur.*   Section 1701q sets forth the general parameters of the statutory scheme, including that the statutory scheme's official "Purpose" is to:

> ...enable elderly persons to live with dignity and independence by expanding the supply of supportive housing that—
>
> (1) is designed to accommodate the special needs of elderly persons; and
> (2) provides a range of services that are tailored to the needs of elderly persons occupying such housing.

15.     12 U.S.C.  § 1701q(k)(7) defines "supportive housing for the elderly" as follows:

> Housing that is designed (A) to meet the special physical needs of elderly persons and (B) to accommodate the provision of supportive services that are expected to needed, either initially or over the useful life of the housing, by the category or categories of elderly persons that the housing is intended to serve

16.     12 U.S.C. § 1701q(k)(1) defines "elderly person" as follows:

> a household composed of one or more persons at least one of whom is 62 years of age or more at the time of initial occupancy

17.     12 U.S.C. § 1701q(k)(18) defines "very low income" as having the same the

meaning as given the term " very low-income families" under 42 U.S.C. § 1437a(b)(2), which

defines the term in pertinent part as:

> The term "very low-income families" means low income families whose incomes do not exceed 50 per centum of the median family income for the area, as determined by the Secretary with adjustments for smaller and larger families, except that the Secretary may establish income ceilings higher or lower than 50 per centum of the median for the area on the basis of the Secretary's findings that such variations are necessary because of unusually high or low family incomes

18.     "Low-income families" includes single persons, including Plaintiff herein, by

virtue of 42 U.S.C. § 1437a(b)(3)(A), which states in pertinent part:

(A)     Single Persons

> The term "families" includes families consisting of a single person in the case of (I) an elderly person, (ii) a disabled person, (iii) a displaced person,

(iv) the remaining member of a tenant family, and (v) any other single persons.

19.     Plaintiff at all times material herein has been, and is, eligible for Section 202 housing, including the dwelling where he presently resides.

## B.  FAIR HOUSING ACT "HANDICAP" DISCRIMINATION

20.     The United States Fair Housing Act of 1968 ("Act" or "the Act"), as amended in 1988, 42 U.S.C. §§ 3601 - 3619, states at § 3601 the Act's "Declaration of Policy":

It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.

21.     As pertains to Plaintiff's rights and Defendants' obligations herein, 42 U.S.C. § 3604(f) prohibits discrimination against persons with one or more "handicap", using the following language:

**§ 3604.        Discrimination in the sale or rental of housing and other prohibited practices**

As made applicable by section 3603 of this title and except as exempted by sections 3603 (b) and 3607 of this title, it shall be unlawful—

\*    \*    \*

**(f)**      [ special rights of handicapped persons ]

\*    \*    \*

      **(2)**      To discriminate against any person in the **terms, conditions, or privileges** of sale or rental of a dwelling, or in the provision of

**Page 6**

services or facilities in connection with such dwelling, because of a **handicap** of—

    **(A)**    that person; or

\*   \*   \*

    **(3)**    For purposes of this subsection, **discrimination includes**—

\*   \*   \*

    **(B)**    a **refusal** to make **reasonable accommodations** in rules, policies, practices, or services, **when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling**;

Emphasis added.

22.    "Handicap" for purposes of the Act and as pertains to Plaintiff herein is defined by 42 U.S.C. § 3602(h) as:

**§ 3602  Definitions.**    As used in this subchapter--

\*   \*   \*

**(h)**    **"Handicap"** means, with respect to a person--

    **(1)**    a physical or mental impairment which substantially limits one or more of such person's major life activities,

    **(2)**    a record of having such an impairment, **or**

    **(3)**    being regarded as having such an impairment,

but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 802 of Title 21).

Emphasis added.

23.    Other definitions in § 3602 that pertain to this lawsuit are set forth as follows:

(b)    **"Dwelling"** means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

(c)    **"Family"** includes a single individual.

(d)    **"Person"** includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries.

(e)    **"To rent"** includes to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant.

(f)    **"Discriminatory housing practice"** means an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title.

*    *    *

(i)    **"Aggrieved person"** includes any person who--

    (1)    claims to have been injured by a discriminatory housing practice; or

    (2)    believes that such person will be injured by a discriminatory housing practice that is about to occur.

*    *    *

(o)    **"Prevailing party"** has the same meaning as such term has in section 1988 of this title.

24.     42 U.S.C. § 3613 grants to aggrieved persons, such as Plaintiff herein, the right to bring a civil action in the appropriate United States District Court in accordance with the following pertinent parts of said statute:

**§ 3613  Enforcement by Private Persons**

**(a)     Civil action**

(1)     (A)     An aggrieved person may commence a civil action in an appropriate United States district court . . .  not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach.

(B)     The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice. . . .

\*     \*     \*

**(c)     Relief which may be granted**

(1)     In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

(2)     In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.

**Page 9**

\*   \*   \*

25.     42 U.S.C. § 3617 protects aggrieved persons, such as Plaintiff herein, the from interference, coercion or intimidation in the exercise and enjoyment of any right protected by section 3604of the statute in accordance with the following pertinent parts of said statute:

**§ 3617   Interference, coercion, or intimidation**

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoy, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

## IV.  <u>FACTUAL  ALLEGATIONS</u>

26.     Plaintiff herein has a physical handicap within the meaning of § 3602(f) as shown by the determination of the Social Security Administration on March 11, 2016, which found that he was disabled due to the following severe impairments:  diabetes mellitus, peripheral neuropathy, bone spur in the right foot, rotator cuff tear in the right shoulder, left carpal tunnel syndrome, bilateral cubital tunnel syndrome, and back and neck pain with myelopathy.

27.     Plaintiff herein has a physical handicap within the meaning of § 3602(f) as shown by the June 18, 2018 and August 14, 2018 statements of his treating physician, Dr. Buddy Stokes. (Exhibit A)

28.     Dr. Stokes was Plaintiff's treating physician; and Dr. Stokes stated in documentation to Defendants on both June 18, 2018 and August 14, 2018, that Plaintiff using his own patio furniture would aid in the treatment of Plaintiff's peripheral neuropathy.  (Exhibit A)

29.     Plaintiff herein has a physical handicap within the meaning of § 3602(f) as shown by the April 18, 2019 statements of his treating physician, Dr. Bonnie Dungan.  (Exhibit B)

30.     Dr. Dungan is Plaintiff's treating physician; and Dr. Dungan noted that Plaintiff had a chronic pain syndrome due to history of spine fusion and degenerative change in her statement on April 18, 2019. (Exhibit B)

31.     On May 15, 2018, Plaintiff requested reasonable accommodations from Glen East II via an email to Defendant SHEILA WEST.  The form of this reasonable accommodation was to be able to use his own patio furniture, rather than the patio furniture provided by the complex on his porch.  (Exhibit C)

32.     On May 18, 2018, Plaintiff filed a formal request for reasonable accommodations form with Defendant,  BECKY HUTTO, requesting be able to use his own patio furniture, rather than the patio furniture provided by the complex on his porch. (Exhibit D)

33.     On May 31, 2018, Plaintiff executed a Reasonable Accommodation verification form so the complex could contact his treating physician, Dr. Buddy Stokes. (Exhibit E)

34.     On June 18, 2018, Dr. Buddy Stokes certified that Plaintiff was disabled and required this accommodation. (Exhibit A)

35.     On June 21, 2018, Defendant, SHEILA WEST, issued a determination notice denying the request, claiming it would "pose a fundamental alteration in the nature of the program." (Exhibit F)

36.     On August 18, 2018, Dr. Buddy Stokes sent an updated accommodation opinion, also opining that Plaintiff needed his own cushion for the patio furniture due to his disabilities. (Exhibit A)

37.     On October 26, 2018, Plaintiff's attorney requested information regarding Plaintiff's request for accommodations and a hearing regarding it.

38.     On October 31, 2018, Defendant SHEILA WEST responded to that request and said she was again requesting information from Plaintiff's physician. (Exhibit G)

39.     On November 6, 2018, counsel for Defendants, Russell Parrish, informed Plaintiff's Counsel that Defendants were again requesting, for the third time, information from the Plaintiff's doctor regarding the request for reasonable accommodation. (Exhibit H)

40.     On December 11, 2018, Dr. Stokes again sent a letter stating "I have reviewed the paperwork and photo's[sic] sent to me by Glen East Apartments regarding Mr. Rick Holley and his Reasonable Accommodation Request.  It is my opinion that the cushion provided by Glen East Apartments is adequate for Mr. Holley's condition.  Please take this under consideration." (Exhibit I)

41.     There was no documentation provided to Plaintiff of what pictures were provided to Dr. Stokes.

42.     Dr. Stokes made no statement regarding the actual furniture.

43.     On January 10, 2019, claiming Dr. Stokes had opined both the furniture and cushion was adequate for Plaintiff's condition, Defendants' counsel, Russell Parrish, again wrote a letter denying Plaintiff's request for reasonable accommodations. (Exhibit J)

44.     Plaintiff requested a 504 meeting with management that was held at Russell Parrish's office on March 11, 2019.

45.     On April 10, 2019, Plaintiff again requested the same reasonable accommodation of being able to use his own patio furniture. (Exhibit K)

46.     On April 18, 2019, Dr. Bonnie Dungan again certified Plaintiff needed this reasonable accommodation to the Defendants. (Exhibit B)

47.     On April 29, 2019, Defendants' counsel, Russell Parrish again sent an email stating that Plaintiffs' own furniture did not, in his opinion, meet Dr. Dungan's requirements. (Exhibit L)

48.     On May 29, 2019, after Plaintiff threatened to file a complaint with HUD, Defendants' counsel Russell Parrish communicated that Plaintiff could use his own furniture. (Exhibit L)

49.     On June 7, 2019, Defendants' counsel, Russell Parrish transmitted a letter to Plaintiff, wherein he stated that Defendants were choosing to terminate Plaintiff's lease for material non-compliance (claiming he interfered with management, reported menial work orders, threatened legal action and HUD complaints), and terminating his lease of July 12, 2019. (Exhibit M)

50.     Plaintiff's counsel communicated that such termination violated the Department of Housing and Urban Development's rules, and requested some compromise.

51.     After said communication, Defendants did not move forward with the lease termination.

52.     On July 25, 2019, Plaintiff submitted a completed and signed complaint to the Department of Housing and Urban Development (HUD), regarding Defendants' continued discriminatory practices against him. (Exhibit N)

53.     HUD assigned conciliator/investigator, Willie Polluck, to the matter.  Plaintiff has worked diligently with him in an attempt to keep his housing.

54.     On August 15, 2019, Defendants' again sent a termination/notice of non-renewal to Plaintiff, claiming that Plaintiff had until September 30, 2019 to vacate the premises. (Exhibit O)

55.     Pursuant to the instructions in the letter, Plaintiff requested an informal hearing with Defendants. Said hearing was held August 28, 2019.

56.     At said hearing, Defendants Becky Hutto and Sheila West both acknowledged that Plaintiff had only two lease infractions—one from October of 2018 when he failed to secure the property's patio furniture during hurricane Michael and one from April of 2019 when he was "rude" to BECKY HUTTO because she barged into his home unannounced for an "inspection" along with pest control.

57.     Defendants BECKY HUTTO and SHEILA WEST claimed that Plaintiff had been a difficult resident for seven years, but what had changed was that there was gossip around the complex that he was going to sue them and that he was encouraging other residents to get attorneys as well.  Both acknowledged Plaintiff had never said this directly to them.

58.     Defendants BECKY HUTTO and SHEILA WEST both acknowledged that there had been no objectionable behavior from Plaintiff since the last infraction of April of 2019.

## V.  PLAINTIFF'S CURRENT HOUSING STATUS

59.     As a result of the Defendants' refusal to grant the reasonable accommodation that Plaintiff has requested to use his own patio furniture,  Plaintiff's health was put at risk; and she had a medical necessity within the meaning of the Fair Housing Act for an injunctive order to require Defendants to forthwith allow the use of the furniture.

60.     As a result of the Defendants' refusal to grant the reasonable accommodation that Plaintiff has requested to use his own patio furniture,  Plaintiff was forced to retain legal counsel

to assert his rights, and is now suffering retaliation in the form of lease non-renewal, as admitted by Defendants SHEILA WEST and BECKY HUTTO.

61.     Plaintiff has incurred legal damage from Defendants' failure to grant Plaintiff's lawful request for "reasonable accommodation" as set forth above; and she will continue to incur legal damage until such reasonable request is granted or ordered and effected by this Court. However, within the meaning of Plaintiff's request herein for injunctive relief from this Court, Plaintiff is without adequate remedy at law.

## V.  CLAIMS FOR RELIEF

62.     In unlawfully failing or refusing to allow Plaintiff's use of his own patio furniture, Defendants have violated 42 U.S.C. § 3604(f)(2) and § 3604(f)(3)(B).

63.     Within the meaning of 42 U.S.C. § 3613(c)(1), Plaintiff is entitled to an injunction requiring Defendants to allow Plaintiff to remain in his home at Glen East II apartment complex.

64.     Within the meaning of 42 U.S.C. § 3613(c)(1), Plaintiff has incurred compensatory damages because of Defendants' unlawful acts and/or failure and/or refusal to act.

65.     To the extent that Defendants' violation of 42 U.S.C. § 36o4(f)(3)(b) is willful and wanton or in reckless disregard of the consequences, Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 3613(c)(1).

66.     Upon prevailing herein, Plaintiff will be entitled to an award of the costs of this action and to an award of a reasonable attorney's fee pursuant to 42 U.S.C. § 3613(c)(2).

## VI.  **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court will:

A.     Declare that Defendants have violated 42 U.S.C. §§ 3604(f)(2) and  3604(f)(3)(B) in failing to accord Plaintiff the "reasonable accommodation" to which he is entitled because of her "handicap".

B.     Enjoin Defendants, pursuant to 42 U.S.C. § 3613(C)(1) to forthwith allow Plaintiff use of his own patio furniture.

C.     Enjoin Defendants from evicting Plaintiff in retaliation for exercise of his rights under the Fair Housing Act.

C.     Award to Plaintiff such actual and punitive damages as she shall prove under 42 U.S.C. § 3613(c)(1).

D.     Grant such other and further relief to Plaintiff as may be just and equitable under the circumstances.

E.     Award to Plaintiff the costs of this action, including a reasonable attorney's fee pursuant to 42 U.S.C. § 3613(c)(2).

Respectfully submitted,

**Kristy Kirkland**(KIR041)
LEGAL SERVICES ALABAMA
224 W. Main Street
Dothan, AL 36303
(334) 793-7932 extension 3753
kkirkland@alsp.org
**Counsel For Plaintiff**

**-- Page 19 of 19 --**